Carl A. GERSTACKER and Jayne H. Gerstacker, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 18870.

United States Court of Appeals Sixth Circuit.

Aug. 13, 1969.

Gilbert A. Currie, Midland, Mich., for petitioners-appellants, James A. Kendall, Currie & Kendall, Midland, Mich., on brief.

Karl Schmeidler, Dept. of Justice, Tax Div., Washington, D. C., for respondent-appellee, Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., on brief.

Before O'SULLIVAN, PHILLIPS and CELEBREZZE, Circuit Judges.

PHILLIPS, Circuit Judge.

Carl Gerstacker and Mrs. Jayne H. Gerstacker, joint return taxpayers, appeal from a decision of the Tax Court holding that legal expenses incident to establishing and conducting guardianships of Mrs. Gerstacker were non-deductible personal expenses instead of deductible medical care expenses during the tax years 1962 and 1963. 49 T.C. 522. The case was heard in the Tax Court by Judge Allin H. Pierce but was decided by Judge Howard A. Dawson, Jr., to whom it was reassigned more than a year after it had been heard. We reverse and remand.

Prior to 1962 Mrs. Gerstacker had a history of emotional-mental problems which had grown gradually worse in their effect upon her. On numerous occasions she had been hospitalized, and she had been treated by several different doctors. In 1962 she ran away from mental hospitals twice after voluntarily entering them. Her doctors advised Mr. Gerstacker that she could be treated successfully only if she could be put under the continuing control of the doctors so that she could not leave and disrupt her therapy. They recommended guardianship proceedings and hospitalization in Milwaukee Sanitarium, Wauwautosa, Wisconsin. Both Mr. and Mrs. Gerstacker employed attorneys. Mr. Gerstacker instituted guardianship proceedings in Michigan where they lived and also had guardianship proceedings conducted in Wisconsin where Mrs. Gerstacker was hospitalized. Guardians were appointed in both states. Mrs. Gerstacker was hospitalized from 1962 until the latter part of 1963 when she was released by her doctors for further treatment on an out-patient basis. The guardianships then were terminated on the recommendations of her doctors that they no longer were necessary due to improved condition of the patient.

The Tax Court held that the legal expenses for establishing, conducting, and terminating the guardianships were an indirect medical expense and that the only indirect medical expense for which the Code authorizes a deduction is transportation. It further held that the "legal services were not rendered as a part of a course of 'treatment' for Jayne's mental illness. They did not have a direct or proximate therapeutic effect on her mental disorders." 49 T.C. 527.

Section 213(e) (1) of the 1954 Internal Revenue Code as it existed in 1962 and 1963 defined "medical care" as:

"amounts paid—

"(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body,

"(B) for transportation primarily for and essential to medical care referred to in subparagraph (A)."

The deduction for "medical care" expenses permitted by § 213 is an exception to the general rule of § 262 that "no deduction shall be allowed for personal, living, or family expenses." Thus, when the question of the deductibility of medical expenses arises, it must be kept in mind that a basic scheme of the Code is to deny deductions for personal expenses. See Havey v. Commissioner, 12 T.C. 409, 411. Treasury Regulations § 1.213–1(e) (1) (ii), based on Senate Report No. 1631, 77th Cong., 2d Sess. 95–96 (1942–2 Cum.Bull. 504, 576–77), provides:

> "Deductions for expenditures for medical care allowable under section 213 will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness."

Since personal expenses are not deductible for tax purposes, and since it is obvious that the congressional purpose is opposed to personal expenses being disguised as "medical care" expenses to attain the status of deductibility, it is apparent that for an expenditure to be deductible it must not be connected merely in some way to the medical care of the taxpayer but it must be proximately related to his medical care. It is likewise clear in construing the term "medical care" in the light of the legislative history, as the Supreme Court did in Commissioner of Internal Revenue v. Bilder, 369 U.S. 499, 82 S.Ct. 881, 8 L.Ed.2d 65, that Congress intended to define "medical care" broadly and that the legislation was remedial in nature. Senate Rep. No. 1631, 77th Cong., 2d Sess. (1942) 95–96.

The taxpayer relies primarily on Havey v. Commissioner, 12 T.C. 409,[1] for his contention that the legal expenses in this case were for "medical care." In that case the Tax Court held:

> "To be deductible as medical expense, there must be a direct or proximate relation between the expense and the diagnosis, cure, mitigation, treatment, or prevention of disease or the expense

must have been incurred for the purpose of affecting some structure or function of the body.

> "In determining allowability, many factors must be considered. Consideration should be accorded the motive or purpose of the taxpayer, but such factor is not alone determinative. To accord it conclusive weight would make nugatory the prohibition against allowing personal, living, or family expenses. Thus also it is important to inquire as to the origin of the expense. Was it incurred at the direction or suggestion of a physician; did the treatment bear directly on the physical condition in question; did the treatment bear such a direct or proximate therapeutic relation to the bodily condition as to justify a reasonable belief the same would be efficacious; was the treatment so proximate in time to the onset or recurrence of the disease or condition as to make one the true occasion of the other, thus eliminating expense incurred for general, as contrasted with some specific, physical improvement?" 12 T.C. at 412.

■ It seems obvious to this Court that a commitment proceeding was necessary to render medical treatment in the present case where Mrs. Gerstacker would not stay in the hospital voluntarily. It also is obvious that commitment proceedings played a role in medical treatment, and that except for Mrs. Gerstacker's illness these legal expenses would not have been incurred. The undisputed evidence was that Mrs. Gerstacker would not stay in the hospital voluntarily long enough for successful therapy and that her doctors stated that it was necessary that she remain under their control in order to be treated with a possibility or probability of success.

Dr. J. S. Gottlieb, a psychiatrist, stated in his recommendations for treatment:

> "Although this patient has been seen by many physicians off and on throughout her life, I get the general impression, which may not be true, but

---

1. This opinion was reviewed by the Tax Court.

still it is a definite impression, that she rather than the physician controlled the therapeutic situation. I would feel that it is futile to do anything for her unless the physician can control her completely.

"This would require a detention order for at least a minimum of three months and most probably longer."

Dr. B. Cullen Burris and the staff of the Milwaukee Sanitarium made the following statement:

"[L]ong-term treatment would be necessary if any results were to be gained. This could not be undertaken unless sufficient legal means were provided to prevent her leaving the hospital."

Dr. Robert Ballmer, physician for Mrs. Gerstacker for more than twenty years, stated:

"I am sure if there is any help for her it is going to have to be in a hospital or institution, whatever it may be, that can control all of her activities or medications. * * * [I]f there is any help for her at all it would have to be some place where they could manage and control every thing."

It was the view of the doctors that compulsory confinement was a part of the therapy which they judged might help Mrs. Gerstacker recover from her illness. Compulsory confinement of course cannot be achieved legally without the authority of law. Such authority was provided here through guardianship proceedings.

It is difficult to conceive of a situation where the relationship between the guardianship expenses and the treatment of Mrs. Gerstacker's illness would be more direct or proximate. Without the guardianship, according to the doctors, there was little if any chance of successful therapy. With the two guardianships the condition of the patient in fact was improved.

There was no direct evidence of any motive in initiating the guardianships other than to promote the cure of Mrs. Gerstacker by making therapy possible. The Tax Court found that the "circumstances which gave rise to the legal services * * * were permeated by personal and family considerations." 49 T.C. at 526. The same would have been true if Mrs. Gerstacker had suffered broken bones instead of an emotional disturbance. The fact that the compulsory confinement of this patient may have been permeated by personal and family considerations is not controlling in determining the legal issue here involved. Section 213(a) is in the Code to create an exception from § 262; it does not make medical expenses non-personal but declares a deduction for personal expenses within the meaning of "medical care."

Mrs. Gerstacker retained her attorney, a personal friend, because of her fears in connection with a commitment over which she would not have the power of termination. She particularly was concerned because there was a possibility of serious brain surgery in view of the diagnoses of doctors in 1962. The record in this case readily would support a finding that the services of the personal attorney for Mrs. Gerstacker, because of some of the peculiarities of her emotional disturbance and her confidence in him as a personal friend, had a distinctly therapeutic value. Had she not employed an attorney, the court of course would have had to appoint counsel to represent her in such proceedings.

The Tax Court held that the expense of the two guardians was purely personal and that they looked after the personal and business affairs of their ward. The record refutes this finding. Mr. Gerstacker was the guardian of his wife's person and estate in Michigan, but he received no fee as guardian. In Wisconsin attorney Goldberg was appointed only as guardian of the person of Mrs. Gerstacker. That appointment was essential to her confinement in Wisconsin. Mr. Goldberg was the only paid guardian and had nothing to do with the estate of his ward.

The Commissioner finds comfort in the fact that the last three phrases of the *Havey* test use the word "treatment."

By its express terms, however, the statute includes cure, mitigation, prevention, and diagnosis as well as treatment within the term "medical care." The Tax Court in *Havey* was not saying that the expense of an anesthesiologist was not deductible or that room and board in a hospital are not deductible, although these may not come within the strict meaning of the word "treatment." The last three phrases of the *Havey* test are met in this case as indicated in our discussion of the relationship between the expenses and mitigation and treatment of the illness of Mrs. Gerstacker.

Contrary to the Commissioner's contention and the conclusion of the Tax Court, we hold that at least a part of the legal expenses in this case are deductible as a matter of law. They meet the test laid down in *Havey* in every respect. Compare Carlisle v. Commissioner, 37 T.C. 424 (telephone and telegraph bills incurred in effort to resign from Army for medical reasons held not to be medical care expenses for lack of proof).

The Commissioner relies on Commissioner of Internal Revenue v. Bilder, 369 U.S. 499, 82 S.Ct. 881, 8 L.Ed.2d 65, in which the taxpayer sought deduction of rent incurred when he took trips at the suggestion of his physician. The Court held that in the face of the language of the House and Senate reports explaining the transportation deduction, § 213(e) (1) (B), such rent could not be deducted as "medical care." This holding does not support the Commissioner's position as to his direct-indirect expense analysis. The same reports clearly indicate a congressional intent to permit deduction of expenses which under the Commissioner's analysis in the present case would be indirect expenses and not deductible. See H.R.Rep. No. 1337, 83d Cong., 2d Sess. A 60 (1954); Sen.Rep. No. 1622, 83d Cong., 2d Sess. 219–20 (1954); 1954 U.S.Code Cong. and Adm.News, pp. 4196, 4855.

The Commissioner further relies on Ochs v. Commissioner of Internal Revenue, 195 F.2d 692 (2d Cir.), cert. denied, 344 U.S. 827, 73 S.Ct. 28, 97 L.Ed. 643, as indicating that the expenses in this case are personal and non-deductible. In that case the taxpayer sought to deduct the cost of sending his children to day school and boarding school while his wife was recovering from surgery for throat cancer. That situation is distinguishable since the expenditures there were not essential to make possible the therapy prescribed by the doctors even though the doctors did recommend that the taxpayer follow the course which he did follow. In the present case the doctors found that the only real possibility of successful therapy depended upon the creation of the guardianship. There was no alternative available such as the taxpayer had in *Ochs*.

The Commissioner urges that the Tax Court decision cannot be overturned without ruling that the findings of fact of that Court are clearly erroneous. This argument is bottomed on the fact that the Tax Court made no express finding that the legal expenses in question were incurred primarily for the alleviation of Mrs. Gerstacker's mental illness. The Commissioner urges that such a finding is necessary to support the taxpayer's position under Treas.Reg.Sec. 1.213–1(e) (1) (ii).

The Treasury Regulations do not require such a fact finding or even such a fact. In Starrett v. Commissioner of Internal Revenue, 41 T.C. 877,[2] where the Court held that the medical reason for the expenses incurred was of equal weight with the non-medical reason (admission to a school), it was held that the taxpayer was entitled to the full deduction.

"Respondent's [Commissioner's] use of the word 'primarily' in his regulation cannot be extended to the point where an expense, clearly for medical care, may nevertheless become non-deductible merely because the end result thereby sought to be achieved might include an advantage or benefit

2. Reviewed by the Tax Court.

to the taxpayer in addition to cure or mitigation of a disease, and we think other language contained in the same paragraph of the regulation indictates no such result was intended. \* \* \* Clearly the word 'primarily' was used with reference to those types of expenditure which by their nature have no more than a remote or general relationship to health or the maintenance thereof. A bill for physicians' services rendered for any of the enumerated statutory purposes is not such." 41 T.C. at 881–882.

The legal expenses in this case had far more than a remote or general relationship to the mental health of Mrs. Gerstacker. The guardianships for which the expenses were incurred accomplished an essential part of the prescribed therapy.

We hold that where legal expenses are necessary to legitimate a method of medical treatment for mental illness, they are "amounts paid \* \* \* for the diagnosis, cure, mitigation, treatment, \* \* \* of disease" and are deductible under § 213(a) of the Internal Revenue Code of 1954 as expenses for "medical care." In the present case the services of the attorneys in both the Michigan and Wisconsin guardianship proceedings and the services of the Wisconsin guardian of Mrs. Gerstacker appear to have been necessary to legitimate the compulsory confinement which was prescribed by her doctors as a part of her treatment. The services of the guardian in the Michigan proceeding also appear to have been necessary, but no issue is presented in this case concerning deductions for his compensation since Mr. Gerstacker served in this capacity in Michigan and charged no fee for his services.

We hold, however, that any part of the fees of the attorneys for Mr. Gerstacker which is attributable to assistance to Mr. Gerstacker in the management of the guardianship estate is not deductible. These services were not essential to legitimate the therapy and therefore lack the proximate relationship to the illness of Mrs. Gerstacker required for deductibility as expenses for medical care.

 As for the fees of the attorney for Mrs. Gerstacker, we hold that they are deductible only to the extent that they were necessary in connection with the initiation and termination of the guardianship proceedings. Fees for any services rendered by this attorney for the conduct of her affairs during the guardianship are not deductible.

We hold that all the compensation allowed to the Wisconsin guardian of the person of Mrs. Gerstacker is deductible as "medical care" expenses.

On remand the Tax Court may hear additional evidence and determine what part of the attorneys' fees and guardianship expenses are deductible as medical expenses under the standards set forth in this opinion. Reversed and remanded for further proceedings consistent herewith.